# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Case No.: 2:17-CV-05856

MAZAL GROUP, LLC, a California limited
liability company,

     *Plaintiff,*

vs.

AGNER EMILIO ESPANA, an individual,
ERAN HENRY DARMAN, an individual, and
DOES 1 to 10,

     *Defendants.*



**FILED**
CLERK, U.S. DISTRICT COURT

Oct. 2, 2017

**CENTRAL DISTRICT OF CALIFORNIA**
BY: _____PG_____ DEPUTY

## DEFENDANT ERAN HENRY DARMAN'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

COMES NOW, the Defendant ERAN HENRY DARMAN ("Defendant"), and, pursuant to Rule 12, Federal Rules of Civil Procedure, hereby files this Motion to Dismiss the Complaint served upon Defendant by the Plaintiff, MAZAL GROUP, LLC ("Plaintiff"), stating as follows:

### INTRODUCTION

Plaintiff's Complaint must be dismissed in its entirety because Defendant is not a party to any of the agreements underlying Plaintiff's claims. In addition, Plaintiff fails to establish that any agency existed between any of the defendants in this case. Plaintiff further fails to plead its fraud claim with sufficient particularity. In any event, Plaintiff does not provide any information or proof regarding Defendant's alleged prohibited sales. Instead, Plaintiff merely concludes that violations have occurred. As a result, and for the reasons set forth below, all of Plaintiff's claims against Defendant must be dismissed.

## MEMORANDUM OF LAW

### I.   MOTION TO DISMISS STANDARD

Under Rule 12(b) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In determining whether a claim can be sustained, all allegations of material fact are taken as true and construed in favor of the non-moving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, this presumption applies only to facts and is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In ruling on a motion to dismiss, the court may consider documents outside the pleadings without the proceeding turning into summary judgment, where the plaintiff's complaint necessarily relies on such documents and their authenticity is not contested. *Buchanan v. Neighbors Van Lines*, No. CV 10-6206 PSG (RCx), 2010 WL 4916644, at *2 (C.D. Cal. Nov. 29, 2010) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)).

To survive a 12(b)(6) motion, a complaint must thus state a claim for relief that is plausible on its face, *i.e.* its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The determination of whether a complaint states a plausible claim for relief is a context-specific task, requiring the court to draw on its own judicial experience and common sense. *Id.*, at 679, 129 S. Ct. 1937.

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

All of Plaintiff's claims against Defendant must be dismissed because Defendant is not a party to any of the agreements which underlie Plaintiff's claims. For the reasons set forth below, Plaintiff fails to state any cause of action for which relief may be granted.

### (i)    *Count 1 – Breach of Contract*

To plead a beach of contract claim, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's breach; and (4) resulting damage. *Benton v. Baker Hughes*, No. CV 12-07735 MMM (MRWx), 2013 WL 3353636, at *5 (C.D. Cal. June 30, 2013). Here, Plaintiff fails to allege that a contract existed between Plaintiff and Defendant. While Plaintiff states that Defendant and Plaintiff entered into separate agreements on February 3, 2017, February 9, 2017, and April 3, 2017 (collectively, the "Agreements"), these Agreements were executed and made effective solely by and between Plaintiff and Agner Emilio Espana ("Espana"), in his individual capacity. As such, there exists no binding agreement between Defendant and Plaintiff and, necessarily, Defendant cannot be in breach of the Agreements. Moreover, to adequately allege that the parties consented to a contract, which is an element of a contract, a plaintiff must plead that they mutually assented to enter into the agreement. *Id*. It is unclear how Plaintiff and Defendant could have mutually assented to enter into the Agreements, as Plaintiff alleges that Defendant became a party to the Agreements without Plaintiff's knowledge and claims that Plaintiff would not have entered into the Agreements with Defendant had it known of Plaintiff's alleged involvement.

As a result, Count 1 of Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted because no contract existed between Defendant and Plaintiff.

(ii)     *No Agency Relationship Existed Between Defendant and Espana*

Plaintiff attempts to establish an agency relationship between Defendant and Espana so as to bind Defendant under the Agreements. In particular, Plaintiff alleges as follows on page 2 of the Complaint:

> "On information and belief, Plaintiff alleges that each [d]efendant was an agent of the other [d]efendant and was acting in the course of their agency at all relevant times. On information and belief, Plaintiff alleges that [Espana] and [Defendant] are engaged in a business relationship and partnership, the details of which Plaintiff is entirely ignorant."

Merely asserting that Defendant is an agent of Espana is a legal conclusion. *RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 11-2118 PSG (SHx), 2011 WL 4802372, at *4 (C.D. Cal. Oct. 11, 2011). As such, the assertion is not entitled to be assumed true for purposes of this Motion. *Iqbal*, at 681, 129 S. Ct. 1937. Plaintiff has not alleged any additional facts to support its agency theory but admits that the same is based merely upon Plaintiff's belief and information, without more. Plaintiff also failed to plead any elements of an agency relationship. It is therefore unclear what type of agency relationship Plaintiff claims existed between Defendant and Espana.[1] Plaintiff itself admits that it has no idea what agency relationship may have existed between Defendant and Espana, as Plaintiff states that it is entirely ignorant in that regard.

Accordingly, Plaintiff has failed to sufficiently allege the existence of any agency relationship between Espana and Defendant and its mere legal conclusion may not be regarded as true by the Court for purposes of this Motion.

---

[1] Because Espana executed and entered into the Agreements in his individual capacity, Plaintiff was required to sufficiently plead the existence of an agency relationship between Defendant and Espana individually.

*(iii)*     <u>Count 2 – Unjust Enrichment</u>

Count 2 of the Complaint must be dismissed because Plaintiff conferred no benefit upon Defendant. In essence, Plaintiff re-pleads its breach of contract claim as an unjust enrichment claim. The elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *In re ConAgra Foods Inc.*, 908 F.Supp.2d 1090, 1112 (C.D. Cal. Nov. 15, 2012). Plaintiff claims that Defendant received a benefit due to Defendant's participation in the Agreements. Specifically, Plaintiff claims that Defendant was given certain rights and enjoyed certain associations by signing the Agreements. Yet, Defendant did not sign any of the Agreements. As such, no benefit was conferred upon or received and enjoyed by Defendant, and Count 2 must be dismissed for that reason alone.

In addition, Plaintiff failed to sufficiently allege why the retention of the alleged benefit was unjust or at Plaintiff's expense. Plaintiff's legal conclusion that the alleged benefit was unjustly retained is not enough to meet the applicable pleading standard. While Plaintiff states that the Agreements were violated and implies that the defendants were consequently not entitled to retain the alleged benefit conferred upon them thereunder, there is no indication as to what these alleged violations were or why they ended the rights to the alleged benefits. While Plaintiff claims that its products were wrongfully sold in violation of the Agreements, Plaintiff does not identify a single product. No product serial or batch numbers are identified in the Complaint. Plaintiff does not know the identity of any of the alleged online sellers. Plaintiff presents no evidence that a single product was sold online or by whom. There are no exhibits showing online offers of Plaintiff's products which were originally purchased by any of the defendants.

The only connection between Defendant and Plaintiff is their prior relationship, which was terminated before any of the Agreements were executed. The only connection between

Defendant and Espana is Plaintiff's conclusory allegation that some kind of agency relationship must have existed between them, regarding whose nature Plaintiff is ignorant. For the foregoing reasons therefore, Count 2 of the Complaint must be dismissed for failure to state a claim upon which relief may be granted.

    *(iv)*    <u>*No Unlawful Business Practice*</u>

    Count 3 of the Complaint must be dismissed because Plaintiff again attempts to unsuccessfully re-plead its breach of contract claim in the form of a different cause of action. The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another, such as the sale of confusingly similar products by which a person exploits a competitor's reputation in the market. *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F.Supp.3d 1123, 1138 (S.D. Cal. April 25, 2014). The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods by the defendant's conduct. *Id.* Here, Plaintiff does not allege that Defendant sold Plaintiff's products as his own or otherwise in competition with Plaintiff. Plaintiff does not allege that Plaintiff did not get paid for the products. Plaintiff does not even identify the products at issue or any online sales offer. Instead, Plaintiff again bases its claim solely on the alleged breach of the Agreements. Plaintiff provides no further explanation as to why the alleged breach of a contractual obligation constitutes unfair competition. Plaintiff again ignores the fact that Defendant is not a party to the Agreements. It is further unclear how Plaintiff suffered lost income or property as a result of any alleged breach, where Plaintiff does not allege that it did not receive payment for the products.

    Because Plaintiff does not distinguish between its common law claim and the statutory claim under Count 3, Plaintiff necessarily fails to properly plead either. Under California's

Unfair Competition Law, any unlawful, unfair, or fraudulent business act or practice is prohibited. Cal. Bus. & Prof. Code §17200. An unlawful business activity includes anything that can be called a business practice that is forbidden by law. *Macy's, Inc.*, 16 F.Supp.3d at 1139. Plaintiff here does not allege that the alleged breach of the Agreements amounted to a violation of law. Moreover, in this context, "unfair" means conduct that threatens an incipient violation of an antitrust law or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law. *Id.* at 1140. Plaintiff does not allege that Defendant's actions were forbidden by law, but only bases its claim on the alleged breach of the Agreements. Without more, a mere contractual breach does not constitute a violation of law. Accordingly, Count 3 must be dismissed because Plaintiff fails to state a claim for which relief may be granted.

> (v)    *Defendant Owed No Duty to Plaintiff*

Count 4 of the Complaint must be dismissed because Plaintiff fails to properly plead all required elements and seems to confuse two separate causes of actions, one of which is not recognized under California Law. It is not fully clear whether Count 4 is a claim for negligent interference with contractual relations or for negligent interference with a prospective economic advantage. The former is not recognized as a cause of action under California law, because it would constitute an unwarranted extension of liability for negligence. *Macy's, Inc.*, 16 F.Supp.3d at 1158-57.

The first element of a claim for negligent interference with a prospective economic advantage requires a plaintiff to allege that an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff. *Id.* at 1158. A threshold causation requirement thus exists as a matter of

law for maintaining this cause of action, which must be met by providing proof that it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference. *Id.* Here, Plaintiff has not alleged any future economic benefit or advantage and has not provided relevant proof thereof.

What is more, however, is that Plaintiff's claim is again based on the alleged contractual obligations of Defendant. Yet, no contract exists between Defendant and Plaintiff. Plaintiff fails to allege sufficiently what duty Defendant owed Plaintiff, and Defendant contends that he did not owe Plaintiff any duty with respect to the Agreements. Therefore, because Plaintiff fails to state a cause of action upon which relief may be granted, Count 4 of the Complaint must be dismissed.

    (vi)    *Plaintiff Fails to Plead Count 5 With Sufficient Particularity*

Plaintiff's fraud claim is subject to a heightened pleading standard, which Plaintiff failed to meet. When alleging fraud, a plaintiff must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Thereby, an allegation of time or place is material when testing the sufficiency of a pleading. Fed. R. Civ. P. 9(f). An allegation must be specific enough to give the defendant notice of the particular misconduct which is alleged to constitute the fraud charged, so that the defendant can defend against the charge and not just deny that they have done something wrong. *Jackson v. Fischer*, 931 F.Supp.2d 1049, 1058 (N.D. Cal. March 15, 2013). The plaintiff must do more than simply allege the neutral facts necessary to identify the transaction and must explain why the disputed statement was untrue or misleading at the time it was made. *Id*. Where a plaintiff proceeds under an agency theory in connection with a fraud claim, such theory must be pleaded with particularity as well. *Trustifi Corp.*, 2011 WL 4802372 at *4.

To prove fraud, a plaintiff must show: (1) a misrepresentation; (2); knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. *Buchanan*, 2010 WL 4916644 at *4.

Here, Plaintiff fails to identify any alleged misrepresentation by Defendant. Plaintiff executed three Agreements with Espana at different times. There is no indication whatsoever that Defendant even knew of the existence of the Agreements. Plaintiff was required to specifically identify the misrepresentations, including time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Id*. Instead, Plaintiff generally concludes that Defendant and Espana engaged in deceptive trade practices to induce Plaintiff to believe that Espana was the sole member of the business engaged by Plaintiff when Defendant was allegedly "in league" with Espana. These allegations fall short of the applicable heightened pleading standard and necessarily stir up many questions: What business does Plaintiff refer to given that the Agreements were executed by Espana in his individual capacity? What misrepresentations does Plaintiff allege Defendant made, when did he make them, and what were their contents? Defendant is further forced to guess what trade practices he allegedly engaged in and the manner in which they were deceptive. Defendant must guess at what point in time he allegedly engaged in these practices. Nor does Plaintiff provide the verification by the Florida Secretary of State showing that the defendants were in business together. All these questions and gaps concerning Plaintiff's claim make it clear that Plaintiff has not met the heightened pleading standard under Fed. R. Civ. P. 9(b).

The Court should also note that Plaintiff states that a prior contract between Plaintiff and Defendant was terminated due to Defendant's violations thereunder in a substantial similar manner as alleged in the Complaint. Based on this occurrence, Plaintiff then alleges a pattern of

intentionally violating Plaintiff's agreements. This, however, is news to Defendant. On December 15, 2016, Defendant received Plaintiff's notice of termination of the June 24, 2014 agreement between Defendant and Plaintiff. (A true and correct copy of Plaintiff's termination notice dated December 15, 2016, is attached hereto as "Exhibit A"). In that notice, Plaintiff stated as follows (emphasis added):

> Please consider this written notice to terminate the Agreement with you *on good terms* as of the date of this correspondence. Pursuant to Section 8 of the Agreement, [Plaintiff] has the right to terminate the Agreement at any time for any reason by providing you with written notice.

Plaintiff thus not only terminated the contract with Defendant on good terms, but also never sued Defendant for any breach thereof for liquidated damages or otherwise. It is only now that Plaintiff alleges Defendant breached its prior contract with Plaintiff.

Plaintiff also alleges that Defendant induced Plaintiff into signing the Agreements by misrepresenting his willingness to abide by the terms. Again, Plaintiff fails to allege what these misrepresentations were, when they were made, and to whom they were made. Moreover, Plaintiff states that it would not have entered into the Agreements with Defendant had it known of Defendant's involvement. This alone should be reason to dismiss Count 5 against Defendant because Defendant did not enter into the Agreements with Plaintiff and it is unclear how Defendant could have fraudulently misrepresented to Plaintiff his non-involvement where no representations were made. Plaintiff states that it was induced into entering in the Agreements because Defendant misrepresented his willingness to abide by the terms of the Agreements. Again, Defendant is not a party to the Agreements and had no obligation to abide by their terms. As such, Defendant's willingness to abide by the terms of the Agreements is wholly irrelevant to this case and Plaintiff cannot base its fraud claim thereon.

Finally, to the extent that Plaintiff attempts to include Defendant as a party to the Agreements under any given agency relationship theory, Plaintiff fails to meet the heightened pleading standard under Fed. R. Civ. P. 9(b), which applies to any agency theory underlying the fraud claim. *Trustifi Corp.*, 2011 WL 4802372 at *4. As set forth above in this Motion, Plaintiff fails to sufficiently plead its agency theory under the normal pleading standard and thus necessarily also falls short of the heightened pleading standard requiring particularity. Accordingly, Count 5 must be dismissed because Plaintiff fails to state a claim for which relief can be granted.

**WHEREFORE,** Defendant respectfully asks this Court to dismiss Plaintiff's Complaint in its entirety with prejudice for the reasons set forth above, and to grant any such further relief as the Court deems just and proper.

### III.   **Alternatively: Defendant Requests a More Definite Statement**

In the event that the Court denies Defendant's Motion to Dismiss, whether in part or in its entirety, Defendant respectfully requests that Plaintiff be ordered to provide a more definite statement as to all claims that the Court does not dismiss. Under Fed. R. Civ. P. 12(e), a party may move for a more definite statement of a pleading if the pleading is so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). Here, Plaintiff's allegations are so vague that Defendant is unable to meaningfully defend himself against any of Plaintiff's claims. Defendant has described the missing pieces to Plaintiff's puzzle in more detail above.

Accordingly, with respect to all of Plaintiff's claims against Defendant, Defendant asks that Plaintiff provide at a minimum: (i) the specific serial or batch numbers of the products allegedly sold in violation of the Agreements; (ii) the facts on which Plaintiff's agency theory

regarding Espana and Defendant is based; (iii) the type of the alleged agency relationship and relevant legal elements; (iv) proof that sales of the products have in fact occurred and dates; (v) proof that any of the products were offered for sale online and dates; (vi) proof of Defendant's alleged prior misconduct under Defendant's contract with Plaintiff and dates; (vii) the contents of any alleged misrepresentations or deceptive practices by Defendant, as well as the dates on which such misrepresentations or practices were made and to whom; and (viii) any such additional information and proof as the Court deems necessary.

**WHEREFORE,** Defendant respectfully asks this Court to: (1) order Plaintiff to provide a more definite statement as to all claims against Defendants, which shall, at a minimum, include the items described above; and (2) grant any such further relief as this Court deems just and proper.

Date:  September 28, 2017.

Respectfully submitted,

ERAN HENRY DARMAN
7045 Stirling Rd., Unit 1304
Davie, FL 33314
Ph: (754) 204-6255
henrydarman@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email to Plaintiff's counsel, Nima Farboody, Esq., at nfarboody@mazalent.com, on September 28, 2017.

ERAN HENRY DARMAN
Ph: (754) 204-6255
henrydarman@gmail.com

# EXHIBIT A

## TERMINATION NOTICE
### (dated December 15, 2016)

[SEE DOCUMENT ATTACHED]



Date: 12/15/2016                          By:   Nima Farboody
                                                E-mail: nfarboody@mazalent.com
Via: Email: djeranhersh@gmail.com

ERAN DARMAN
7045 Stirling Rd. #1304,
Davie, FL 33314

Re:     Notice of Termination of 6/24/2016 Right to Sell Licensing Agreement

Dear Eran Darman

I am contacting you on behalf of Mazal Group, Inc., licensor of the Lionesse and Vine Vera
Brands, with respect to our 6/24/2016 Right to Sell Licensing Agreement with you (the
"Agreement"). Thank you for your business.

Please consider this written notice to terminate the Agreement with you on good terms as of the
date of this correspondence. Pursuant to Section 8 of the Agreement, Mazal Group has the right
to terminate the Agreement at any time for any reason by providing you with written notice.
Such termination is effective immediately once written notice is given.

In light of this notice to terminate, please refer to your post-termination obligations as outlined in
Section 9 of the Agreement. A copy of the Agreement with the relevant provisions is attached
herein for your reference. More specifically, we request that you immediately discontinue all
promotion, marketing, and advertising of any Lionesse and Vine Vera products and provide us
with a current accounting of your remaining uncommitted inventory of Lionesse and Vine Vera
products. Please note that pursuant to Section 9.02 of the Agreement, Lionesse and Vine Vera
has the right, upon its election, to repurchase any remaining uncommitted inventory of Lionesse
and Vine Vera products. We also kindly request that you immediately cease use of any Lionesse
and Vine Vera intellectual property, including but not limited to any trademarks, logos, or
designations.

It has been a pleasure working with you and we hope for a smooth transition in this matter. If
you have any questions about this Notice of Termination, please contact us by Email above.

Very Truly Yours,

**Nima Farboody**
General Counsel | Mazal Group
20255 Corisco St., Chatsworth, CA 91324

DocuSign Envelope ID: 812A930A-0016-4439-85F1-771E67304C1F

Brands, with respect to our 6/24/2016 Right to Sell Licensing Agreement with you (the "Agreement"). Thank you for your business.

Please consider this written notice to terminate the Agreement with you on good terms as of the date of this correspondence. Pursuant to Section 8 of the Agreement, Mazal Group has the right to terminate the Agreement at any time for any reason by providing you with written notice. Such termination is effective immediately once written notice is given.

In light of this notice to terminate, please refer to your post-termination obligations as outlined in Section 9 of the Agreement. A copy of the Agreement with the relevant provisions is attached herein for your reference. More specifically, we request that you immediately discontinue all promotion, marketing, and advertising of any Lionesse and Vine Vera products and provide us with a current accounting of your remaining uncommitted inventory of Lionesse and Vine Vera products. Please note that pursuant to Section 9.02 of the Agreement, Lionesse and Vine Vera has the right, upon its election, to repurchase any remaining uncommitted inventory of Lionesse and Vine Vera products. We also kindly request that you immediately cease use of any Lionesse and Vine Vera intellectual property, including but not limited to any trademarks, logos, or designations.

It has been a pleasure working with you and we hope for a smooth transition in this matter. If you have any questions about this Notice of Termination, please contact us by Email above.

Very Truly Yours,

_____

**Nima Farboody**

General Counsel | Mazal Group

20255 Corisco St., Chatsworth, CA 91324

DocuSign Envelope ID: 812A930A-0016-4439-85F1-771E67304C1F

**MAZAL GROUP INC.**
**RIGHT TO SELL LICENSING AGREEMENT – PHYSICAL RETAIL ONLY**

This Right to Sell Licensing Agreement ("Agreement") is made by and between Mazal Group Inc. ("MG"), a California corporation with its principal place of business at 20255 Corisco Street, Chatsworth California 91311, and Eran Darmond ("Licensee"), a(n) individual, with its principal place of business and/or residence at 7045 Stirling Rd #1304, Davie, FL 33314, with reference to the following facts.

## RECITALS

A.   MG, on behalf of its clients, provides licensees with access to high-end skincare and cosmetics products (the "Products" or "MG Products") for sale to retail customers through approved physical retail locations. As part of access to the Products, MG has license to use and sub-license various intellectual property and trade secrets associated with the Lioness brand, including but not limited to the trademarks referenced in Exhibit A, to licensees ("Licensed IP") for use in the sale of MG Products at approved physical retail locations.

B.   Licensee operates a _____Retail Store / _____Kiosk / _X_ Cart located at ("MG Licensed Location(s)" or "Licensed Location(s)"):

    a.   Boynton Beach Mall - Boynton Beach, FL
    b.   _____
    c.   _____
    d.   _____
    e.   _____
    f.   _____

C.   Licensee desires, upon the terms and conditions set forth herein, to obtain a license to sell, offer for sale, or otherwise advertise MG Products solely at the MG Licensed Location(s) expressly designated herein. Licensee acknowledges that it is essential to the preservation of the integrity of the Licensed IP, and the goodwill of MG Products, that Licensee maintain and adhere to certain standards, procedures, and policies described hereinafter.

D.   MG is willing, upon the terms and conditions set forth herein, to license to Licensee the right to sell MG Products, as well as utilize the Licensed IP, at the MG Licensed Location(s) expressly designated herein.

NOW THEREFORE, in consideration of the promises and the mutual provisions herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**1.   GRANT OF RIGHT TO SELL.**

1.01.   <u>Grant of Right to Sell.</u>  Subject to all of the terms and conditions herein, MG grants to Licensee the non-exclusive, non-transferrable, non-divisible, and revocable license to use the Licensed IP and right to sell, offer for sale, or otherwise advertise MG Products solely at the MG Licensed Location(s) listed in this Agreement. Licensee may not change the Licensed Location(s), except with MG's prior written consent, which MG may grant or withhold in its sole discretion. Regardless of whether the Licensee changes its Licensed Location(s), it will remain obligated for all liabilities and obligations arising out of or in connection with any prior locations.

1.02.   <u>Authorized Products.</u>  Licensee shall only sell, offer for sale, or otherwise advertise at the MG Licensed Location(s) MG Products which Licensee has purchased directly from MG. Sale, offers for sale, or advertising at the Licensed Location(s) of any MG Products acquired through any other means by Licensee is strictly prohibited and considered a material breach of this Agreement.

1.03.   <u>Authorized Sales Channels.</u>  Licensee shall only sell, offer for sale, or otherwise advertise MG Products at the MG Licensed Location(s). Sale, offers for sale, or advertisement of MG Products via other sales channels including, but not limited to, online, wholesale or distribution channels, or transfer of bulk quantities of Products at reduced cost is strictly prohibited and considered a material breach of this Agreement. **This Agreement is only for retail sales direct to end-use consumers at the Licensed Location(s). Licensee is not authorized to sell, list, advertise or otherwise market MG Products online, either directly or indirectly. Licensee is not authorized to sell MG Products to other resellers, wholesalers, bulk quantity purchasers at reduced cost, or any other person, company, or entity other than sales direct to end-use consumers at the Licensed Location(s). Licensee is not authorized to sell, list, advertise or otherwise market MG Products in bulk quantities at reduced cost to end-use consumers at the Licensed Location(s).** Any sale, offers for sale, or advertising of (i) MG Products at an unauthorized location other than the Licensed Location(s); (ii) MG Products online, either directly or indirectly; (iii) MG Products to another reseller, wholesaler or similar purchaser of bulk quantities of Products at reduced cost; or (iv) MG Products obtained through unauthorized channels of distribution other than MG (each of (i), (ii), (iii), and (iv) an "Unauthorized Sale"), shall be considered a material breach of this Agreement and may expose Licensee to damages at law, equity, including but not limited to the liquidated damages provision contained in this Agreement.

Licensee shall operate the MG Licensed Location(s) in conformity with all applicable laws and regulations. As part of this Section, but not in limitation of, Licensee shall undertake to maintain at its own expense and responsibility any and all product certification requirements as are necessary for the lawful sale of all Products.

**2.   TERM.**   This Agreement shall take effect upon the Effective Date and its term shall extend until terminated pursuant to **Section 8** hereof.

**3.   LICENSED IP/MARKETING MATERIALS.**   Licensee expressly acknowledges that MG is the sole and exclusive licensor of the Licensed IP. Licensee's rights of usage under this Agreement only extend to the Licensed IP for the sole purpose of promoting or facilitating Licensee's sale of MG Products exclusively within the MG Licensed Location(s) specified herein. In no event shall this license to Licensee extend to

1

Initials  _ED_

DocuSign Envelope ID: 812A930A-0016-4439-85F1-771E67304C1F

display, upload, or other use of the Licensed IP in connection with any website, social media account, or other online presence used by Licensee. Licensee shall not represent in any manner that Licensee has acquired any ownership rights in the Licensed IP, and shall designate the Licensed IP with any ownership notices as may be prescribed by MG from time to time. Licensee shall not use any of the Licensed IP or any marks, names, or indicia which are or may be confusingly similar to the Licensed IP in Licensee's own entity or business name. Licensee shall not apply for or register any copyrights, trademarks, domain names, or any other official government filings for any marks, names, or indicia which are or may be confusingly similar to the Licensed IP. Licensee further acknowledges and agrees that any and all goodwill associated with the MG Products, and identified by the Licensed IP shall inure directly and exclusively to the benefit of their respective owners as communicated by MG and that, upon the expiration or termination of this Agreement for any reason, no monetary amount shall be assigned as attributable to any goodwill associated with Licensee's use of the Licensed IP. Licensee understands and agrees that any use of the Licensed IP other than as expressly authorized by this Agreement, without MG's prior written consent, is an infringement and material breach of MG and their respective Licensed IP owners' rights therein and that the right to use the Licensed IP granted herein does not extend beyond the termination or expiration of this Agreement

Licensee shall make full use of all advertising, marketing, and promotional material supplied directly by MG. Licensee shall not be permitted to use any advertising, marketing, or promotional material not directly supplied by MG without MG's prior express written consent. In all advertising and promotion of the MG Products, Licensee shall comply with MG's standard advertising policies and requests as may be specified from time to time, including but not limited to the exclusion from use of specific advertising, marketing, or promotional materials even if such materials were originally supplied to Licensee by MG. Licensee shall bear all the advertising, marketing, and promotion costs and all business expenses incurred by it in marketing, promoting, advertising and selling the MG Products.

**4.   MINIMUM ADVERTISED PRICING (MAP).**   From time to time MG may establish minimum advertised pricing for certain Products, for certain customers and/or for certain situations. Licensee shall adhere to such minimum advertised pricing as so established by MG ("MAP Guidelines"), including but not limited to prices advertised by MG on its corporate website, provided that Licensee shall not be required to sell Products at any particular price or at or above any minimum price if such a requirement would be unlawful.

**5.   PRODUCT SERIAL NUMBERS.**   Licensee hereby acknowledges that any or all MG Products may be marked with a unique serial number for tracking and enforcement purposes, and expressly agrees that certain Products and serial numbers may be directly assigned to Licensee. Licensee further acknowledges that tampering with Product serial numbers is a criminal offense punishable by fine and imprisonment. MG reserves the right to divulge any counterfeit or tampered products to law enforcement channels when required. Licensee shall not in any manner or form tamper with any MG Products sold to Licensee, including but not limited to the alteration or concealment of Product serial numbers. *LICENSEE HEREBY ACCEPTS FULL RESPONSIBILITY AND LIABILITY FOR ANY PRODUCT WITH LICENSEE'S ASSIGNED SERIAL NUMBER(S) THAT IS TAMPERED WITH OR SOLD THROUGH UNAUTHORIZED CHANNELS, INCLUDING BUT NOT LIMITED TO, SALES IN VIOLATION OF SECTIONS 1.02 AND 1.03 OF THIS AGREEMENT.*

**6.   CONFIDENTIALITY OF INFORMATION.**   Licensee, for itself, its employees, contractors, consultants, and agents, agrees to: (a) safeguard MG's Confidential Information with the same degree of care that Licensee uses to protect its own confidential information; (b) maintain the confidentiality of this information; (c) not use such information except as permitted under this Agreement; and (d) not disseminate, disclose, sell, publish, or otherwise make available this information to any third party without the prior written consent of MG.

For purposes of this Agreement, "Confidential Information" shall mean any and all information that is not publicly known, and that is disclosed to or discovered by Licensee in any form including but not limited to Trade Secrets, website designs, layouts, design concepts, trademarks, discoveries, ideas, facts, product development strategy and activity, corporate assessments and strategic plans, customer lists, financial and statistical information, accounting information, systems, processes, formulae, inventions, product specifications, data, know-how, graphs, samples, research and development, distribution methods, customer requirements, price lists, market studies, business plans, marketing plans, marketing methods, discoveries, policies, guidelines, procedures, practices, financial statements, projections, budgets, licenses, agreements, contracts, leases, surveys and marketing plans and information of MG. "Trade Secret" shall mean any information, including a formula, pattern, compilation, program, device, method, technique, or process, that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy, and shall include but is not limited to each of the following: Unique vendor information, customer lists, business methods, pricing information, product information, profit margin information, financial information, overhead information, cost information, purchasing information, personnel information, data compilations, processes, systems, cost information, designs, patterns, drawings, business relationships, business plans, business methods, manufacturing techniques, and manufacturing methods provided to Licensee by MG or discovered by Licensee by virtue of its relationship with MG whether such information is expressly disclosed to Licensee or otherwise.

**7.   TRANSFER AND ASSIGNMENT.**

7.01.   <u>Assignment by MG</u>. This Agreement and all rights and duties hereunder may be freely assigned or transferred by MG and shall be binding upon and inure to the benefit of MG's successors and assigns.

7.02.   <u>Transfer by Licensee</u>. Licensee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Licensee and that MG has granted the License in reliance on Licensee's personal background, business skills, experience, and financial capacity, it is important to MG that Licensee be known to MG and always meet MG's standards and requirements. Accordingly, Licensee shall not be permitted or have the power, without the prior written consent of MG, to make any Transfer or assignment.

Any Transfer that does not comply with the terms of this Section 7 shall be null and void.

**8.   DEFAULT AND TERMINATION.**

8.01.   <u>Termination by the Parties</u>. MG may terminate this Agreement at any time, for any and/or no reason, by providing written notice to Licensee of such termination. Such termination by MG is effective immediately upon written notice being given to Licensee pursuant to Section 11 herein. Licensee may terminate this Agreement upon two (2) months prior written notice to MG, so long as Licensee, up until the point of its written notice to MG, has fully performed on all its obligations under this Agreement and has not been in default or material breach of this Agreement.

8.02.   <u>Material Breach/Default by Licensee</u>. Without in any way limiting MG's termination rights in Section 8.01, or the general meaning of the terms "material breach" or "default," the following non-exhaustive list of occurrences shall constitute a material breach and/or default by Licensee allowing MG to terminate the Agreement and be entitled to the remedies outlined in Section 8.03:

8.02.1.   If Licensee makes, or has made, any false statement or report to MG in connection with this Agreement or the application therefore;

2



DocuSign Envelope ID: 812A930A-0016-4439-85F1-771E67304C1F

8.02.2.  If License sells, offers for sale, advertises, or gives away any MG Products via online or other physical locations aside from the Licensed Location(s) defined in this agreement;

8.02.3.  If License sells, offers for sale, advertises, or gives away any MG Products to non end-use retail consumers including, but not limited to, wholesalers, distributors, or consumers purchasing bulk quantities at reduced cost;

8.02.4.  If Licensee engages in any Unauthorized Sale as defined in Section 1 of this Agreement; or

8.02.5.  If Licensee sells, offers for sale, advertises, or gives away any MG Products in violation of the MAP Guidelines as specified in Section 4 of this Agreement.

8.03.  Remedies to MG/Liquidated Damages.  If the Licensee is in default, in addition to the rights MG has to terminate the Agreement, the Licensee agrees to pay MG, among the many remedies available to MG (which MG does not waive by the exercise of any rights hereunder), a payment of $100,000.00 USD as liquidated damages.  Licensee and MG agree that these liquidated damages represent a reasonable estimate of MG's costs, expenses, and other damages and are a fair compensation to MG for the loss suffered by MG as a direct and proximate cause of Licensee's default.  MG shall be entitled to retain and have recourse to any bond, deposit, credit or advance previously deposited by Licensee under this Agreement to fulfill any liquidated damages MG is entitled to under this Section 8.03.

**BY INITIALING HERE** [ *EO* ]**, LICENSEE ACKNOWLEDGES AND MAKES A PERSONAL GUARANTEE OF THE REASONABLENESS OF THIS SECTION AND THE ABILITY OF MAZAL GROUP TO SEEK ADDITIONAL RELIEF IF DEEMED APPROPRIATE FROM LICENSEE, OWNERS, OR ANY GUARANTORS.**

8.04.  Governing State Law.  If a different notice or cure period or default is prescribed by applicable California law, it shall apply to a termination of this Agreement.

8.05.  Waiver.  No failure on the part of the MG to exercise any power reserved to it by this Agreement or to insist on strict compliance with any obligation or condition under this Agreement will be considered to be a waiver of the right to exercise the power or to insist on compliance with the obligation or condition in the future.

## 9.  POST TERMINATION OBLIGATIONS.

9.01.  Post-Termination Obligations.  Upon the Termination of this Agreement by any means or for any reason, Licensee shall immediately:

9.01.1.  Discontinue all promotion, marketing and advertisement of the Products;

9.01.2.  Cease all display, advertising, and use of all Licensed IP related names, trademarks, logos, designations, and the Licensed IP, and agree to thereafter refrain from use, advertisement, or display such names, trademarks, logos, designations, or Licensed IP;

9.01.3.  Pay all sums owing to MG, with all outstanding invoices for Products accelerating and becoming immediately due and payable.  Upon termination for any default by Licensee, such sums shall also include liquidated damages as specified in **Section 8**.  MG reserves the right to hold funds until the liquidated damages amount is completely paid, and can use such funds to offset the liquidated damages amount pursuant to Section 8.03 of this Agreement; and

9.01.4.  Notify MG of any orders or portions thereof remaining unshipped as of the effective date of the termination.  MG shall have the option to cancel all such orders or portions thereof.

9.02.  Right to Repurchase.  MG shall have the right, but not the obligation, to repurchase any amount of the entire remaining uncommitted inventory of the Products held by Licensee within thirty (30) days of the Termination Date.  MG shall pay the Licensee for all products so repurchased (if received in new and re-saleable condition) an amount equal to the price paid by the Licensee to MG, less a restocking charge of fifteen percent (15%) of such price.  Upon receipt of any products so reacquired from the Licensee, MG shall issue an appropriate credit to the Licensee's account.

## 10.  INDEMNIFICATION AND RELATIONSHIP OF PARTIES.

10.01.  Indemnification.   Licensee agrees to protect, defend, indemnify, and hold MG and its clients, affiliates, their directors, officers, shareholders, employees, and agents jointly and severally, harmless *from and against* all claims, actions, proceedings, damages, costs, expenses, and other losses (including death) and liabilities, consequently, directly, or indirectly incurred (including, without limitation, attorneys', accountants' and other related fees) as a result of, arising out of, or connected with the operation of the Licensed Location(s) or use of the Licensed IP.  The indemnity provisions herein this Section shall not apply to product liability claims.

10.02.  Relationship of Parties.  The relationship of MG and Licensee is that of a licensor and licensee.  Nothing in this Agreement will be construed to create a partnership, joint venture, or agency, and neither party to this Agreement will be liable for the debts or obligations of the other.

**11.  NOTICES.**  Except as otherwise provided in this Agreement, notices required to be given pursuant to this Agreement shall be effective when received, and shall be sufficient if given in electronic mail or writing, hand-delivered, sent by facsimile, sent by First Class Mail, return receipt requested (for all types of correspondence), postage prepaid, or sent by overnight courier service to the addresses set forth herein.

**12.  SURVIVAL.**  Sections 1.02, 1.03, 5, and 6 shall survive any termination of this Agreement.

**13.  GOVERNING LAW.**      This Agreement shall be governed by and construed in accordance with the internal laws of the State of California without giving effect to any choice or conflict of law provision or rule (whether of the State of California or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than those of the State of California.  Any legal suit, action or proceeding arising out of or related to this Agreement or the matters contemplated hereunder shall be instituted exclusively in the federal courts of the United States or the courts of the State of California, in each case located in the city of Los Angeles and County of Los Angeles, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding and waives any objection based on improper venue or *forum non conveniens*.  In the event of any legal suit, action, or proceeding brought within the state courts of the State of California, such disputes will be adjudicated at the North Valley District Chatsworth Courthouse located in Chatsworth, California.  Service of process, summons, notice or other document by mail to such Party's address as specified in this Agreement shall be effective service of process for any suit, action or other proceeding brought in any such court.  International Licensees hereby expressly guarantee that they have an agent of process located within the United States, whose mailing address is listed herein.

**14.  SEVERABILITY & CONSTRUCTION.**

14.01.  Severability.  If any part, article, paragraph, sentence, or clause of this Agreement is held to be indefinite, invalid, or otherwise unenforceable, the entire Agreement will not fail on account of the holding, and the balance of this Agreement will continue in full force and effect.

14.02.  Construction.  All terms and words used herein shall be construed to include the number and gender as the context of this Agreement may require.  The parties agree that each section of this Agreement shall be construed independently of any other section or portion of this



*EO*  Initials

DocuSign Envelope ID: 812A930A-0016-4439-85F1-771E67304C1F

Agreement.  As used in this Agreement, the words "include," "includes," or "including" are used in a non-exclusive sense.   Articles and Section titles used in this Agreement are for convenience only and shall not be deemed to affect the meaning or construction of any of the terms, provisions or conditions in this Agreement.

**15.  ENTIRE AGREEMENT& AMENDMENT.**       This Agreement, including any exhibits and schedules attached hereto contains the entire agreement of the parties and supersedes any prior written or oral agreements between the parties and may only be modified by a writing executed by the parties.

**16.  SUBMISSION OF AGREEMENT.**  Submission of this Agreement by MG to Licensee does not constitute an offer to distribution.  This License  Agreement  shall  become  effective  only  upon  full  execution  and  delivery  thereof  by  MG  to  Licensee.

*EO* ___ Initials

DocuSign Envelope ID: 812A930A-0016-4439-85F1-771E67304C1F

### GUARANTY OF LICENSEE'S AGREEMENT

In consideration of, and as an inducement to, the execution of the foregoing Right to Sell Licensing Agreement by Mazal Group Inc. ("MG"), the undersigned ("Guarantor") hereby jointly and severally guarantees unto MG that ("Licensee") will perform and/or pay each and every covenant, payment, agreement, obligation, liability and undertaking on the part of Licensee contained and set forth in or arising out of such Right to Sell Licensing Agreement, and every other agreement signed by the Licensee with MG (the "Obligations").

MG, its successors and assigns, may from time to time, without notice to the Guarantor (a) resort to the Guarantor for payment of any or all of the Obligations of the Licensee to MG, whether or not MG or its successors have resorted to any property securing any of the Obligations or proceeded against any Guarantor or any party primarily or secondarily liable on any of the Obligations; (b) release or compromise any Obligation of the Licensee or of any Guarantor hereunder or any Obligations of any party or parties primarily or secondarily liable on any of the Obligations; and (c) extend, renew, or credit any of the Obligations of the Licensee to MG for any period (whether or not longer than the original period), alter, amend, or exchange any of the Obligations, or give any other form of indulgence, whether under the Right to Sell Licensing Agreement or not.

Each Guarantor further waives presentment, demand, notice of dishonor, protest, nonpayment and all other notices whatsoever, including without limitation: notice of acceptance hereof; notice of all contracts and commitments; notice of the existence or creation of any liabilities under the foregoing Right to Sell Licensing Agreement and other agreement and of the amount and terms thereof; and notice of all defaults, disputes, or controversies between Licensee and MG resulting from such Right to Sell Licensing Agreement, other agreements or otherwise, and the settlement, compromise or adjustment thereof.

Guarantor jointly and severally agrees to pay all expenses paid or incurred by MG in attempting to enforce the Obligations and this Guaranty against Licensee and against Guarantor and in attempting to collect any amounts due thereunder and hereunder, including reasonable attorneys' fees if such enforcement or collection is by or through an attorney-at-law.  Any waiver, extension of time or other indulgence granted from time to time by MG or its agents, successors or assigns, with respect to the foregoing Obligations, shall in no way modify or amend this Guaranty, which shall be continuing, absolute, unconditional and irrevocable.

If more than one person has executed this Guaranty, the term "Guarantor" as used herein shall refer to each such person, and the liability of each Guarantor hereunder shall by joint and severally and primary as sureties.

[SIGNATURE PAGE FOLLOWS]

*EO* Initials

DocuSign Envelope ID: 812A930A-0016-4439-85F1-771E67304C1F

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement to become effective on the date it is executed by the last of Licensee or MG.

**MAZAL GROUP INC.**

By: Shawn Oded

Date: 6/24/2016

Title: General Manager

Signature: *Shawn Oded*
704877F4201346C...

**Licensee**

Full Name: Eran Darman

Date: 6/24/2016

(Re) Seller's Permit #:

State: Fl

Signature: *Eran Darman*
1A1F2724E81A430...

Title: Owner

Company Name: Ene

Address (No P.O. Boxes): 7045 Stirling rd unit 1304 Davie FL 33314

E-Mail: Djeranhersh@gmail.com

Phone: 7542046255

**Guarantor**

Full Name: Eran Darman

Signature: *Eran Darman*
1A1F2724E81A430...

Date: 6/24/2016

Address (No P.O. Boxes): 7045 Stirling Rd

E-Mail: djeranhersh@gmail.com

Phone: 7542046255

Fax:

6

*ED* Initials

DocuSign Envelope ID: 812A930A-0016-4439-85F1-771E67304C1F

## List of Marks

| Mark | Class | Registration No. | Registration Date |
|---|---|---|---|
| LIONESSE | 003, 008, 035, 044 | 4355307 | June 18, 2013 |
| LIONESSE w/ design | 003, 008, 035, 044 | 4351471 | June 11, 2013 |
| LIONESSE w/ design | 003, 008, 035, 044 | 4355309 | June 18, 2013 |
| [Lion Head] design | 003, 008, 035, 044 | 4351473 | June 11, 2013 |